# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES ALEXANDER SAADI,** | ) | Case No. 17-cv-1966 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Hon. Sara L. Ellis |
| **CITIMORTGAGE, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## RESPONSE TO MOTION TO DISMISS

Plaintiff James Alexander Saadi, by and through counsel, for his response to Defendant Citimortgage, Inc.'s Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1), or Alternatively, Rule 12(b)(6) (the "Motion to Dismiss"), states:

### I. Introduction

In the wake of the national housing crisis, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law No. 111-203, 124 Stat. 1376 (2010) (to be codified in various sections of the U.S. Code) ("Dodd-Frank"). A key component of Dodd-Frank was the creation of the Consumer

1

Financial Protection Bureau ("CFPB"). *Id.* § 1011*, et seq; 12 U.S.C.* § 5491. The CFPB was charged with implementing Dodd-Frank and did so by, *inter alia*, issuing new rules governing mortgage servicing. *See 12 U.S.C. § 5512, et seq.* On January 17, 2013, the CFPB issued the RESPA ("Regulation X") and TILA ("Regulation Z") Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 ("Regulation X") (February 14, 2013), which became effective on January 10, 2014.

These rules created significant rights for homeowners and imposed new obligations upon mortgage servicers[1]. Homeowners could now seek information about their mortgage loans[2] and if they applied for loss mitigation to modify their loan[3], their mortgage servicer was obligated to refrain from moving for foreclosure sale[4]. And, for the first time, mortgage servicers were compelled to provide the

---

[1] 12 C.F.R. § 1024.30, *et seq*.
[2] 12 C.F.R. § 1024.36
[3] 12 C.F.R. § 1024.41, *et seq.*
[4] 12 C.F.R. § 1024.41(g) provides: If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
**(1)** The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;**(2)** The borrower rejects all loss mitigation options offered by the servicer; or **(3)** The borrower fails to perform under an agreement on a loss mitigation option.

requested information and to correct or respond to errors that were brought to their attention[5]. Significantly, the regulations implemented by the CFPB empowered those who found themselves in an active foreclosure to seek modification of their mortgage while staying a foreclosure sale in certain circumstances[6]. Plaintiff in this case is the intended beneficiary of Dodd-Frank. He pursued loss mitigation, provided information and made application for loss mitigation as instructed. When his loan could not be modified he sought alternatives to foreclosure, namely, a short-sale. In short, he played by the new rules created by the CFPB. His servicer, Citimortgage, did not. Plaintiff has a private right of action[7] as set forth in the complaint which stands independent of the foreclosure proceedings.

With its Motion to Dismiss, Citimortgage seeks to avoid liability for its conduct arguing that either the *Rooker-Feldman* doctrine applies and this Court

---

[5] 12 C.F.R. § 1024.41(e)(2)(i) provides that "[e]xcept as set forth in paragraphs (f) and (g) of this section, a servicer may respond to a notice of error by either: (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."
[6] 12 C.F.R. §1024.41(g)
[7] 12 C.F.R. §1024.41(a) provides: "A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

3

lacks jurisdiction, or alternatively, the doctrine of *res judicata* dictates that the Court accept the findings of the state court which heard and concluded Citimortgage's foreclosure action against Plaintiff. Neither doctrine is applicable here, because, contrary to Defendant's assertion, Plaintiff does not seek appeal of the state court's judgment of foreclosure, but rather damages for the independent wrongs he suffered due to Citimortgage's failure to live up to its statutory obligations under Dodd -Frank. To deprive Plaintiff the ability to seek redress here would make the statute meaningless - a servicer could simply ignore its statutory obligations and ram through a foreclosure to judgment, arguing in any subsequent suit that the borrower, as here, is precluded because his claims arise in the context of a foreclosure case.

## II.    Factual Background and Procedural History

The factual allegations of the Plaintiff's complaint must be taken as true and Plaintiff agrees that the Court should take judicial notice of the finality of the foreclosure proceedings in the state court[8] in order to determine its own subject matter jurisdiction. This action arises from conduct which took place *after* a judgment was entered against Plaintiff in the foreclosure case.    Following

---

[8] *Citimortgage v Saadi*, Docket No. 2011-Ch-1006, pending in the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois (hereinafter, the "Foreclosure Case.").

commencement of the foreclosure case, Saadi sought various loss mitigation option from 2011 through 2015 - these efforts are painstakingly detailed in the Complaint. Notwithstanding the fact that its borrower, Saadi, was actively pursuing loss mitigation, Citimortgage engaged in prohibited dual-tracking. It moved the case toward a default judgment and ultimately completed the collection of its account by selling Saadi's home.

### III. Legal Standard

Citimortgage moves to dismiss pursuant to F. R. Civ Pro. 12, in particular subsections (b)(1), for lack of subject matter jurisdiction, and (b)(6), for failure to state a claim upon which the court may grant relief.

#### A. Rule 12(b)(1) Standard

Citimortgage first argues that under Rule 12(b)(1), the Court must decline to exercise subject matter jurisdiction and dismiss Plaintiff's complaint under the *Rooker-Feldman* doctrine. *Rooker v. Fid. Tr. Co*. 263 U.S. 413 (1923); *District of Court of Appeals v Feldman*, 460 U.S. 462 (1986). Because this is a factual attack on jurisdiction, the Court is free to consult evidence outside the pleadings.

#### B. Rule 12(b)(6) Standard

5

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." Yet, while "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the `grounds' of his `entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555; see also *Iqbal*, 556 U.S. at 678-79.

**IV. Argument**

This Court has subject matter jurisdiction and *res judicata* does not preclude Plaintiff's claims.

A. **The Court has subject matter jurisdiction to hear Plaintiff's claims which are not barred by the *Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine proscribes federal courts from reviewing final judgments of state courts. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923). Lower federal courts do not provide an "appropriate appellate proceeding" for state court litigants to collaterally attack a state court's judgment. *Rooker,* 263 U.S. 413, 415-16 (1923). "Because the *Rooker-Feldman* doctrine is jurisdictional in nature, its applicability ends the litigation in federal court and the court has no authority to address affirmative defenses, including *res judicata*." *Ctrs., Inc. v. Town of Brookfield*, 148 F.3d 699, 703 (7th Cir. 1998). Thus, before the Court may go any further and reach *res judicata* grounds, it considers whether *Rooker-Feldman* applies in this case.

The Seventh Circuit instructs: "to determine the applicability of the *Rooker-Feldman* doctrine, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself." *Garry v. Geil*s, 82 F.3d 1362, 1365 (7th Cir. 1996). Only if the alleged injury resulted from the state court judgment, or is inextricably intertwined with it, does Rooker-Feldman find a foothold. *Id*. If, instead, the party "maintains an injury

7

apart from the loss in state court," then Rooker-Feldman does not apply *Id*. The critical inquiry is "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir.1996); see also *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir.1993). The Seventh Circuit has recognized a distinction between "a federal claim alleging injury caused by a state court judgment" and "a federal claim alleging a prior injury that a state court failed to remedy. A federal court is precluded from considering the former, but not the latter, under the Rooker-Feldman doctrine." Long v. Shorebank Development Corp., 182 F. 3d 548, 555 (7th Cir. 1999).

In this case, there is no question that there is a final judgment in a state court proceeding. Thus, the only issue is whether the claims made here are "inextricably intertwined" with those decided in the foreclosure case. They are not.

In *Siljee v. Atlantic Partnership Bank*, Civ. No. 15-cv-1762 (KM), 2016 WL 2770806 (D.N.J. May 12, 2016), Judge McNulty recently was presented with a similar case. There, the plaintiff asserted claims under RESPA much like those alleged here. In declining to apply *Rooker-Feldman*, Judge McNulty writes:

> Count 2 (RESPA violation) stands on a separate footing. It

> appears to be a modest claim for damages based upon failure to respond to a QWR. Such noncompliance with RESPA does not implicate the validity of the mortgage or Atlantic's standing. It is not inconsistent with the existence of a final judgment of foreclosure. Where the federal plaintiff presents "some independent claim," i.e., one that does not implicate the validity of the state court judgment, the *Rooker-Feldman* doctrine does not apply. *Exxon Mobil,* 544 U.S. at 292 (quoted in *Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547-48 (3d Cir. 2006))

*Siljee*, 2016 WL 2770806, at *5 [footnote omitted]. Judge Kugler has adopted the same reasoning. *See, Bowen v. Bank of America, N.A.*, Civ. No. 14-cv-3531(RBK/AMD), 2015 WL 1968974 (D.N.J. April 30, 2015) (finding RESPA claim did not require *Rooker-Feldman* abstention); *Farah*, 2016 WL 1162644 (declining to dismiss based upon *Rooker-Feldman* but granting dismissal based upon failure to adequately plead facts in support of RESPA claims). Courts in other jurisdictions have also declined to apply *Rooker-Feldman* to RESPA claims brought post-judgment. See, *Molina v. Aurora Loan Services, LLC*, Civ. No. 15-10456, 635 Fed.Appx. 618, 2015 WL 7753215 (11th Cir. 2015) (declining to dismiss pursuant to *Rooker-Feldman* the plaintiff's RESPA claims centered on post-judgment discrimination in loan modification). In *Nivia v Nationstar Mortgage, LLC*, 620 Fed. Appx. 822, 824–25, 2015 WL 4930287, at *2 (11th Cir.

9

2015), *cert. denied sub nom. Nivia v. Aurora Loan Servs., LLC*, 136 S. Ct. 909, 193 L. Ed. 2d 793 (2016), the Eleventh Circuit writes:

> Here, we note that, in asserting claims under TARP and HAMP, the homeowners neither seek to undo the effect of the foreclosure judgment nor make arguments that would have undermined its validity. First, the homeowners seek only damages, which, if awarded, would not nullify the state court judgment because the instant action does not challenge the transfer of the real property effectuated by the foreclosure. Second, the success of putative claims under TARP or HAMP would not require a determination that the state court erroneously entered the foreclosure judgment.
>
> . . .
>
> Here, however, the homeowners' challenge to the lenders' denial of their modification request has no bearing on the legal validity of the state court's foreclosure judgment. The homeowners alleged only that the lenders failed to respond adequately to their September 2012 request for a loan modification, which could not have been at issue in the foreclosure proceeding that concluded in December 2011. Further, and more importantly, there is no authority for the proposition that a lender's failure to fulfill any duties under TARP or HAMP invalidates a foreclosure resulting from that failure as a matter of law. The *Rooker-Feldman* inquiry is not whether a claim for damages is based to any degree on harm resulting from a valid state court judgment, as is the case here. The inquiry is whether either the damages award would annul the effect of the state court judgment or the state court's adoption of the legal theory supporting the award would have produced a different result. *See Casale,* 558 F.3d at 1260. Neither is the case here. For these reasons, the

putative claims under TARP and HAMP are not barred under the *Rooker-Feldman* doctrine.

**B. Res Judicata Doctrine Does Not Preclude Plaintiff's Claims**

The doctrine of *res judicata* contains three elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) **the subsequent suit is based on the same transaction or occurrence**. [emphasis added]. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991) (state law); *United States v. Athlone Indues.*, Inc., 746 F.2d 977, 983 (3d Cir. 1984) (federal law). Application of *res judicata* "requires substantially similar or identical causes of action and issues, parties, and relief sought," as well as a final judgment. *Culver v. Ins. Co. of N. Am.*, 115 N.J. 451, 460 (1989). Thus, "[w]here the second action is no more than a repetition of the first, the first lawsuit stands as a barrier to the second." *Id*.

Any party asserting collateral estoppel, or "issue preclusion," must show that "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party

11

against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Hennessey v. Winslow Township,* 183 *N.J.* 593, 875 *A.*2d 240 (2005).

In the present matter, Plaintiff pleads that Citimortgage failed to properly review Plaintiff's loan modification application and mishandled Plaintiff's appeal alleging error thereafter. Simply stated, at no point during the foreclosure case did this issue arise. The doctrine of res judicata is simply not implicated here.

## V. Conclusion

For the foregoing reasons, Plaintiff prays that the Motion to Dismiss be denied.

*Respectfully submitted,*
**JAMES ALEXANDER SAADI**

By: /s/ *Rusty A. Payton*

**Counsel for Plaintiff**
Rusty A. Payton
Marc E. Dann
PaytonDann Attorneys
115 South LaSalle Street, Suite 2600
Chicago, Illinois 60603
312-702-1000 [Ph. and Fax]
payton@paytondann.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing pleading was served *via* the Court's Electronic Filing System on all parties and counsel of record on the following date.

>Ryan M. Holz (Lead Trial Attorney)
>Justin A. Seccombe
>Locke Lord LLP
>111 South Wacker Drive
>Chicago, Illinois 60606
>rholz@lockelord.com
>jseccombe@lockelord.com
>*Counsel of Record for Defendant CitiMortgage, Inc.*

Date: June 14, 2017         By: */s/ Rusty A. Payton*
                                Rusty A. Payton